# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

      Plaintiff,        :        Case No. 3:03-cr-090
                                                     Also Case No. 3:07-cv-284

                                                     District Judge Walter Herbert Rice
      -vs-                                  Chief Magistrate Judge Michael R. Merz
                                             :

HAROLD I. DAKERS,

      Defendant.

## REPORT AND RECOMMENDATIONS

This case is before the Court on Defendant's Motion to Vacate pursuant to 28 U.S.C. § 2255 (Doc. No. 52). On Order of United States Magistrate Judge Sharon L. Ovington (Doc. No. 53), the United States filed an Answer to the Motion on December 7, 2007 (Doc. No. 61). Despite having requested and been granted additional time in which to respond to the Government's Answer (Doc. No. 60 and notation order granting), Defendant has never responded to the Answer. Thus the § 2255 Motion is ripe for decision.

On July 9, 2003, the federal grand jury at Dayton returned an Indictment charging Defendant in three counts (Doc. No. 1). Defendant filed a Motion to Suppress (Doc. No. 5) which was denied after hearing on August 20, 2004 (Doc. Nos. 10, 11, 19). On October 22, 2004, Defendant entered into a Plea Agreement (Doc. No. 28) with the United States under which he would plead guilty to Count 1 of the Indictment, charging him with conspiracy to distribute and possession with the intent of distributing more than 100 kilograms of marijuana, in return for which the United States would dismiss Counts 2 and 3. In ¶ 6 Defendant reserved the right to appeal the decision denying his

1

Motion to Suppress. In ¶ 13 he admitted that the Statement of Facts related to the case and submitted to the Court was true. On October 22, 2004, he appeared before Judge Rice and entered his guilty plea pursuant to the Plea Agreement (Transcript, Doc. No. 30).

Having been sentenced pursuant to his plea, he appealed to the Sixth Circuit Court of Appeals on January 24, 2005 (Doc. No. 37). That Court affirmed the judgment based on the reasons Judge Rice had given in denying the Motion to Suppress (Doc. Nos. 48, 49). Defendant did not seek review in the United States Supreme Court, but instead, on August 2, 2007, filed the instant Motion under 28 U.S.C. § 2255.

Defendant pleads the following grounds for relief:

> **Ground One:** Counsel provided constitutionally ineffective assistance.
>
> **Supporting Facts:** Counsel provided ineffective assistance prior to, during, and after the motion to suppress the evidence hearing. Failed to investigate and prepare for hearing. (b) failed to file all relevant motions to discovery expert witnesses and failed to have all documents and evidence available at the hearing. (c) failed to challenge the taking of petitioner's keys and failed to argue/challenge the probable cause (initial Traffic stop) (d) in post hearing memorandum failed to address Miranda Rights violation.
>
> **Ground Two:** Counsel failed to rebut, challenge, or object to the prosecutorial misconduct committed by the Government.
>
> **Supporting Facts:** Counsel failed to rebut in the allotted 14 days stating it was a generic brief. (b) failed to request Brady material (canine officer videotape of the stop). (c) failed to challenge/object to the misrepresentation of material facts (weather, reason for going to car, what trooper was doing), vouching for its own witnesses, (d) made a false statement of a material fact or committed fraud upon the court by stating that there was nothing in the Sgt.'s background that could question his credibility.
>
> **Ground Three:** Government denied the petitioner due process of law by committing numerous instances of prosecutorial misconduct.
>
> **Supporting Facts:** (a) defense wasn't provided w/ a copy of the canine officer's videotape from his patrol car. (b) Government misrepresented material facts and committed fraud upon the court

(weather was raining and the roads were wet, not dry and clear, vouching for its own witnesses, vouched for the credibility of its own witness, committed fraud upon the court by making a false statement regarding the credibility of the witness.

**Ground Four:** The petitioner was denied effective assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution.

**Supporting Facts:** Upon denial of petitioner's *pro se* motion to reappoint counsel that was heard 10-5-2004, petitioner filed another *pro se* motion to reappoint counsel that was never heard; forcing petitioner to use counsel of conflict.

(Motion, Doc. No. 52).

**Ineffective Assistance of Counsel**

In Grounds One, Two, and Four, Defendant asserts he received ineffective assistance of trial counsel from Assistant Federal Public Defender Cheryll Bennett in a number of respects.

The governing standard for effective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168, 106 S. Ct 2464, 91 L. Ed. 2d 144 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

Defendant acknowledges in his Motion that *Strickland* provides the governing standard (Motion, Doc. No. 52, at 15). Each of his trial attorney's alleged failings is examined in order.

His first claim seems to be that Ms. Bennett did not introduce in evidence at the motion to suppress hearing notes Petitioner had written and given here on August 14, 2003, including a commercial driver's license manual. This did not constitute deficient performance on Ms. Bennett's part because (1) the notes constituted hearsay and would not have been admissible and (2) Mr. Dakers has not shown how any of the information in the notes would have refuted the testimony of the arresting officer.

Mr. Dakers' second claim is that Ms. Bennett did not file motions to obtain *Brady* and Jencks material prior to the motion to suppress hearing. However, under Fed. R. Crim. P. 16 and *Brady*, the prosecution has a duty to turn over such materials upon request and without a motion. The

4

prosecutor in this case advises that she did so, and Mr. Dakers provides no evidence that any undisclosed Brady material exists.

Mr. Dakers' third claim is that Ms. Bennett did not object to the assertion of probable cause for the traffic stop or argue about the impropriety of the arresting officer's taking his keys.

In part this claim is refuted by the record. The Motion to Suppress (Doc. No. 5) is strongly based on an assertion that the officer lacked probable cause for the initial stop. In the Brief in Support (Doc. No. 13), filed after the evidentiary hearing, Ms. Bennett mentions that Officer Gooding had an on-board video camera which could have confirmed his oral testimony that Mr. Dakers' truck swerved outside the side stipe of the highway three times, but never activated the camera. Mr. Dakers asserts she could have gone further and refuted his testimony by using his notes. As noted above, however, the notes would not have been admissible in evidence. There is no doubt that driving the truck outside marked lanes was a traffic violation, that Trooper Gooding was authorized to make a stop for that violation, and that there was no testimony to the effect that the violation did not occur. Defendant relies on *United States v. Freeman,* 209 F. 3d 464 (6th Cir. 2000), but the traffic violation allegedly observed in that case was much more tenuous than the one described by the officer here and the officers there proceeded to search the vehicle for drugs without any additional reason to suspect drugs were present, whereas here the search occurred only after a drug dog alerted on the vehicle. Judge Rice noted in denying the Motion to Suppress that the lawfulness of the initial stop was no longer being challenged (Decision and Entry, Doc. No. 19, at 8), but Mr. Dakers has offered no suggestion of how it could reasonably have been challenged.

With respect to the seized keys, Mr. Dakers' argument is no more persuasive. It is true that Sergeant Gooding offered only a speculative basis for having taken the keys, but the keys themselves were not evidence against Mr. Dakers, so even if they had been suppressed, that would not have affected the Government's case. Once the drug dog alerted on the vehicle, it is highly

5

likely that the officer would have entered the vehicle to search it, whether or not he could unlock the doors or would have had to force entry.

Mr. Dakers' next claim is that Ms. Bennett did not pursue a *Miranda* claim. It is accurate that no *Miranda* claim was briefed after the motion to suppress hearing and Judge Rice treated the claim as abandoned. However, Defendant provides no basis on which to believe there was any tenable *Miranda* claim. Successful advocacy does not consist in making and pressing to the limit every conceivable argument. Here Ms. Bennett preserved Defendant's option to pursue a *Miranda* claim by including it in the initial Motion, but there was no evidence at the hearing which made it worth pursuing and Defendant does not now point to any such evidence or indeed any evidence which might have been presented at the hearing.

In his second Ground for Relief, Defendant argues that by failing to file a post-hearing reply memorandum in support of the Motion to Suppress, Ms. Bennett failed to object to a number of instances of prosecutorial misconduct. The docket does indeed show that no reply memorandum was filed. However, Defendant's § 2255 Motion does not show that there was in fact any prosecutorial misconduct to be objected to, much less that failure to do so was somehow deficient performance by Ms. Bennett or that any deficiency prejudiced Defendant.

The first claim of misconduct is that the Government violated *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), by not producing a videotape from the canine officer's car. First of all, the Assistant United States Attorney advises the Court in the Government's Answer that, to the best of her information formed after exhaustive inquiry, there is no such tape. Secondly, any such tape would not, as Mr. Dakers argues, prove that no traffic violation occurred because the canine officer was not on the scene when Sergeant Gooding made his observations.

The second claim is that the Government misstated the facts by inaccurately reporting what the ticket showed as to weather and road conditions. It is true that the Government's brief is

inconsistent with the ticket, but the weather conditions are in no way material to the case. If anything, the fact that the roadway was wet (which is what the ticket says) would give a Highway Patrol Officer more reason to be concerned about a truck driving into the emergency lane than if the highway were dry.

Mr. Dakers' complains that the Government "vouched" for its witnesses, but that constituted mere argument and was made to the trial judge, not to a jury. See Fed. R. Evid. 104(a). Mr. Dakers complains that Ms. Fehrman, the Assistant United States Attorney assigned to this case, stated there was nothing in Sergeant Gooding's background which would cast doubt on his credibility. He cites the dissenting opinion of The Honorable Ralph Guy in *United States v. Akram*, 165 F. 3d 452 (6th Cir. 1999), where Trooper Gooding's credibility as to what happened in a traffic stop in that case was questioned along with the credibility of the other Ohio Highway Patrol officers involved in the stop. It simply does not constitute prosecutorial misconduct to fail to cite a dissenting opinion by an appellate judge on the credibility of a witness in another case.

On habeas corpus review, the standard to be applied to claims of prosecutorial misconduct is whether the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process, *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Darden v. Wainwright,* 477 U.S. 168 (1986); *Kincade v. Sparkman*, 175 F.3d 444 (6th Cir. 1999) or whether it was "so egregious as to render the entire trial fundamentally unfair." *Cook v. Bordenkircher*, 602 F.2d 117 (6th Cir. 1979); accord *Summitt v. Bordenkircher*, 608 F.2d 247 (6th Cir. 1979), *aff'd sub nom*, *Watkins v. Sowders*, 449 U.S. 341 (1981); *Stumbo v. Seabold*, 704 F.2d 910 (6th Cir. 1983). The court must first decide whether the complained-of conduct was in fact improper. *Frazier v. Huffman*, 343 F.3d 780 (6th Cir. 2003), *citing United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001). A four-factor test is then applicable to any conduct the Court finds inappropriate: "(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2)

whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and whether the evidence against the defendant was strong." *Id.* The court must decide whether the prosecutor's statement likely had a bearing on the outcome of the trial in light of the strength of the competent proof of guilt. *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982). The court must examine the fairness of the trial, not the culpability of the prosecutor. *Serra v. Michigan Department of Corrections,* 4 F.3d 1348, 1355 (6th Cir. 1993)(quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In *Serra*, the Sixth Circuit identified factors to be weighed in considering prosecutorial misconduct:

> In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.

*Id.,* at 1355-56 (quoting *Angel*, 682 F.2d at 608). The misconduct must be so gross as probably to prejudice the defendant. *Prichett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997), *cert. denied*, 118 S. Ct. 572 (1997); *United States v. Ashworth,* 836 F.2d 260, 267 (6th Cir. 1988).

Even if Ms. Bennett had objected to these particular pieces of conduct by Ms. Fehrman, it is very unlikely that would have impacted the outcome of the Motion to Suppress. Judge Rice was able to judge the credibility of Sergeant Gooding directly. As an experienced trial judge, he was unlikely to be misled into finding the officer credible just because Ms. Fehrman thought he was credible. He also had the traffic ticket available to him if deemed the weather and road conditions material.

Finally, Mr. Dakers complains that, because his second motion to replace Ms. Bennett as his attorney was not ruled on, he was forced "to use counsel of conflict." (Motion, Doc. No. 52, at 24). It is true that this Motion (Doc. No. 25) did not receive a separate ruling by Judge Rice. However, the Motion was filed October 12, 2004, after Judge Rice had just heard Defendant's first Motion to

Appoint New Counsel and no new reasons were given. Indeed, the Motion in question merely states in conclusory fashion that there are "irreconcilable differences" between Defendant and Ms. Bennett. Even now in his § 2255 Motion Defendant does not explain what the differences were or how that rendered Ms. Bennett unable to represent him.

In sum, Mr. Dakers has not shown any deficiency of performance by Ms. Bennett, much less that any change in her performance would likely have produced a different result on the Motion to Suppress. Therefore, his claims of ineffective assistance of counsel should be dismissed.

### Prosecutorial Misconduct

In addition to faulting Ms. Bennett for not complaining about prosecutorial misconduct, Mr. Dakers seeks relief directly for that asserted misconduct in his third Ground for Relief. For the reasons set forth in discussing Ms. Bennett's reaction to these acts by the prosecutor, the Court is not persuaded that there was any misconduct. However, there is an additional reason why Defendant cannot recover on this claim, to wit, his failure to raise it on direct appeal.

Persons convicted of federal crimes have a right to appeal to the appropriate circuit court of appeals and to seek review in the United States Supreme Court. Considering the efficiency of having all issues dealt with in one proceeding, the federal courts have encouraged use of direct review to the fullest possible extent. Yackle, POSTCONVICTION REMEDIES, §108 (1981). A motion to vacate under §2255 is not a substitute for direct appeal. *United States v. Duhart,* 511 F.2d 7 (6th Cir. 1975); *DiPiazza v. United States*, 471 F.2d 719 (6th Cir. 1973). Absent manifest injustice or special circumstances such as a change in the law, §2255 motions will be dismissed summarily if they raise claims that were or might have been asserted on direct review. Hertz & Liebman, Federal Habeas Corpus Practice and Procedure 5th, §41.7(e)(2005), *citing, Reed v. Farley*, 512 U.S. 339, 358

(1994); *Withrow v. Williams*, 507 U.S. 680, 721 (1993); *Davis v. United States,* 417 U.S. 333, 342 (1974); *Kaufman v. United States*, 394 U.S. 217, 227 n. 8 (1969); Yackle, POSTCONVICTION REMEDIES, §108 (1981)*,* citing *Mars v. United States,* 615 F.2d 704 (6th Cir. 1980); *Mathews v. United States,* 11 F.3d 583 (6th Cir. 1993).

This claim of prosecutorial misconduct could have been but was not raised on direct appeal. Therefore it is procedurally defaulted and cannot be considered on the merits in a § 2255 proceeding. The procedural default analysis of *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977)*,* and its progeny is fully applicable to §2255 motions. *United States v. Frady*, 456 U.S. 152, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982); *Kaufman v. United States*, 394 U.S. 217, 89 S. Ct. 1068, 22 L. Ed. 2d 227 (1969); *Ratliff v. United States*, 999 F.2d 1023 (6th Cir. 1993).

**Conclusion**

Defendant's Grounds for Relief are without merit and, in the case of Ground Three, procedurally defaulted. The § 2255 Motion should therefore be denied with prejudice. Because

reasonable jurists would not disagree with this conclusion, Defendant should be denied leave to appeal *in forma pauperis* and any requested certificate of appealability.

November 21, 2008.

s/ **Michael R. Merz**<br>Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).